IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION


| | |
|---|---|
| JOHN SALMONS, SR., | Civ. No. 1:17-cv-01104-MC |
| Plaintiff, | **OPINION & ORDER** |
| v. | |
| THE STATE OF OREGON; DHS CHILD WELFARE DIVISION, MEDFORD BRANCH; STATE OF OREGON ATTORNEYS GENERALS OFFICE; THE CITY OF KLAMATH FALLS, OREGON ET AL.; CARTER JONI COLLECTION AGENCY, LLC, | |
| Defendant. | |

McSHANE, District Judge.

Plaintiff John Salmons, Sr. seeks leave to proceed *in forma pauperis* ("IFP") in this action. ECF No. 2. The State of Oregon, the Oregon Department of Human Services, and the Oregon Department of Justice (collectively "the State Defendants,") have filed a motion to dismiss. ECF No. 4. The Court notes the State Defendants' motion, but for purposes of procedural clarity the Court has opted to resolve Salmons's IFP petition pursuant to 28 U.S.C. § 1915(e)(2)(B).

For the reasons set forth below, the Complaint, ECF No. 1, is DISMISSED with prejudice as to all claims against the State Defendants brought pursuant to 42 U.S.C. § 1983. The Complaint is DISMISSED with leave to amend as to Salmons's other claims.

## LEGAL STANDARD

Generally, all parties instituting any civil action in United States District Court must pay a statutory filing fee. 28 U.S.C. § 1914(a). However, the federal IFP statute, 28 U.S.C. § 1915(a)(1), provides indigent litigants an opportunity for meaningful access to federal courts despite their inability to pay the costs and fees associated with that access. To authorize a litigant to proceed IFP, a court must make two determinations. First, a court must determine whether the litigant is unable to pay the costs of commencing the action. 28 U.S.C. § 1915(a)(1). Second, it must assess whether the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915(e)(2)(B).

In regard to the second of these determinations, district courts have the power under 28 U.S.C. § 1915(e)(2)(B) to screen complaints even before service of the complaint on the defendants, and must dismiss a complaint if it fails to state a claim. Courts apply the same standard under 28 U.S.C. § 1915(e)(2)(B) as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). To survive a motion to dismiss under the federal pleading standards, the complaint must include a short and plain statement of the claim and "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged. The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court is not required to accept legal conclusions, unsupported by alleged facts, as true. *Id.*

*Pro se* pleadings are held to less stringent standards than pleadings by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). That is, the court should construe pleadings by *pro se* plaintiffs liberally and afford the plaintiffs the benefit of any doubt. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). Additionally, a *pro se* litigant is entitled to notice of the deficiencies in the complaint and the opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. *Id.*

## DISCUSSION

The Complaint in this case is disjointed and difficult to read. It appears to assert claims against the State of Oregon, the Oregon Department of Human Services ("DHS") and "State of Oregon Attorneys Generals Office," which the Court interprets as a claim against the Oregon Department of Justice ("DOJ"), for actions taken with regard to a state court juvenile dependency proceeding involving Salmons's children. Some, if not all, of these claims appear to assert claims for constitutional violations pursuant to 42 U.S.C. § 1983.

The Complaint also brings claims against the City of Klamath Falls and the Carter Jones Collection Agency.[1] These claims relate to disputes over the payment of fines for municipal code violations and traffic tickets. The claims against the City of Klamath Falls and the Carter Jones Collection Agency do not appear to have any connection to the claims against the State Defendants.

---

[1] The Carter Jones Collection Agency is identified in the caption as "Carter Joni Collection Agency, LLC."

## I. The State Defendants

Salmons appears to bring his claims against the State Defendants pursuant to 42 U.S.C. § 1983. Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). To maintain a claim under § 1983, "a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

### A. Sovereign Immunity

The Eleventh Amendment provides that a state is immune from suit in federal court unless Congress has abrogated the state's immunity by appropriate federal legislation or the state itself has waived it. *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011). It is similarly well settled that a state agency is entitled to sovereign immunity from suit. *P. R. Aqueduct & Sewer Auth. v. Metcalf*, 506 U.S. 139, 144 (1993). Congress has not abrogated state sovereign immunity in 42 U.S.C. § 1983. *See Braunstein v. Ariz. Dep't of Transp.*, 683 F.3d 1177, 1188 (9th Cir. 2012).

To the extent that Salmons's claims against the State Defendants arise under § 1983, those claims are barred by sovereign immunity. This jurisdictional deficiency cannot be remedied by amendment and those claims are therefore dismissed with prejudice. The Court is mindful of the fact that *pro se* plaintiffs should be given the benefit of the doubt and so the Court will proceed to identify the other deficiencies in Salmons's Complaint. Salmons will also be given leave to restate his claims on some other basis, if he is able to do so.

### B. Standing

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III [of the United States Constitution]." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "Standing addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). At an "irreducible constitutional minimum," Article III standing "requires the party asserting the existence of federal court jurisdiction to establish three elements: (1) an injury in fact that is (a) concrete and particularize and (b) actual or imminent; (2) causation; and (3) a likelihood that a favorable decision will redress the injury." *Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010) (internal quotation marks and citation omitted).

In addition to these constitutional limitations on federal court jurisdiction, there are also prudential limitations on its exercise. *Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1103-04 (9th Cir. 2006). The doctrine of prudential standing "restrict[s] the grounds a plaintiff may put forward in seeking to vindicate his personal stake." *Id.* at 1104. Courts must consider, among other things, "whether the alleged injury is more than a mere generalized grievance, whether the plaintiff is asserting her own rights or the rights of third parties, and whether the claim in question falls within the zone of interests to be protected or regulated by the constitutional guarantee in question." *Wolfson*, 616 F.3d at 1056 (internal quotation marks and citation omitted). "As a prudential matter, even when a plaintiff has Article III standing, we ordinarily do not allow third parties to litigate on the basis of the rights of others." *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 917 (9th Cir. 2004).

### 1. Lack of Jury Trial

Salmons alleges that parents are not given a jury trial in state court proceedings to terminate parental rights. Compl. 2. Although Salmons alleges that his children have been placed in foster care, it does not appear from the Complaint that he has been subjected to a proceeding terminating his parental rights. *See* Compl. 3 ("[DHS's failure to return phone calls has] made it very difficult for me to work with the state of Oregon in order to Get my children back from Foster Care[.]").

From the face of the Complaint, it appears that Salmons is asserting either a generalized grievance regarding the allocation of jury trials in state court, or is asserting a claim on behalf of some unnamed third party. In either case, Salmons lacks standing.

### 2. Sexual Harassment of Mrs. Salmons

Salmons claims that his wife was sexually harassed by an Oregon state employee named Kevin Reed on multiple occasions. Compl. 5. Salmons asserts that his wife has filed complaints with the State of Oregon and the Medford Police Department, but that no action was taken. Compl. 5. Salmons does not allege that he was subjected to sexual harassment and Mrs. Salmons is not a party to this action.

Because Salmons cannot present claims on behalf of Mrs. Salmons and does not allege that he was subjected to sexual harassment himself, he lacks standing to bring this claim.

### C. Thirteenth Amendment Claim

Salmons has four children who were placed into foster care in 2015. Compl. 2. As part of the juvenile dependency proceedings, parents are required to "complete services," which can be time consuming. Compl. 2-3. Parents are not compensated for the time they spend completing services. Compl. 2-3. Salmons estimates that he has performed 4,000 hours of

uncompensated work for the State of Oregon as part of these "services." Compl. 3. Salmons alleges that the practice of requiring parents to "complete services" as part of a juvenile dependency proceedings without monetary compensation is a violation of the "Declaration of Proclamation Act." Compl. 3. Salmons also asserts that DHS has frequently failed to return his phone calls and that he is entitled to compensation for the time he spent on the phone. Compl. 11. The Court construes this as a Thirteenth Amendment claim brought pursuant to 42 U.S.C. § 1983.

The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States. . . ." U.S. Const. Amend XIII § 1. Involuntary servitude or peonage "occurs when an individual coerces another into his service by improper or wrongful conduct that is intended to cause, and does cause, the other person to believe that he or she has no alternative but to perform the labor." *Brogan v. San Mateo City*, 901 F.2d 762, 764 (9th Cir. 1990) (internal quotation marks and citation omitted).

In this case, Salmons does not clearly allege what labor he was required to perform, other than a nebulous reference to "services" connected to the juvenile dependency proceedings. Salmons does not clearly allege who required these services of him. Salmons does not allege that DHS caused him to believe he had no alternative but to perform those services, nor does Salmons allege that DHS engaged in improper or wrongful conduct in order to cause Salmons to believe that he had to perform the services. On the contrary, it appears that DHS was conducting a regular dependency proceeding through the Oregon state courts.

As to the unreturned telephone calls, Salmons does not allege that he believed that he had no alternative but to make those calls, nor does he allege that any of the Defendants caused him to believe that he had to make the calls.

**D. Failure to train**

Salmons alleges that DHS relied on the uncorroborated allegations of a person with severe mental illnesses in its handling of Salmons's case. Compl. 3. Salmons appears to allege that DHS Child Protective Services relied on this person's false claims that Salmons had been convicted of manslaughter and/or murder, as well as other crimes, in order to refer Salmons to an agency. Compl. 4. Although it is not clear from the Complaint who this person is, there are some indications that it is Mrs. Salmons. Compl. 5. It is similarly unclear what decisions were made or actions taken by DHS based on the allegations of this person.

Salmons appears to allege a claim against DHS based on failure to train DHS employees to properly deal with individuals with mental illnesses. Inadequate training may serve as a basis for § 1983 liability "only where the failure to train amounts to deliberate indifference" to the rights of those with whom the untrained person comes into contact and the failure to train actually caused a constitutional harm or deprivation of rights. *Flores v. Cnty of Los Angeles*, 758 F.3d 1154, 1158-59 (9th Cir. 2014). Deliberate indifference is a "stringent standard of fault," which requires proof that the official "disregarded the known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal quotation marks and citation omitted). A plaintiff must demonstrate a "conscious or deliberate choice" on the part of the defendant. *Flores*, 758 F.3d at 1158 (internal quotation marks and citation omitted). In order to state a claim based on inadequacy of training, a plaintiff must allege facts showing that the defendant "disregarded the known or obvious consequence that a particular omission in their

training program would cause . . . employees to violate citizens' constitutional rights." *Id.* at 1159 (quotation marks and citation omitted).

In this case, it is not clear what constitutional right was violated as a result of Defendants' alleged failure to train employees to work with people with mental illnesses. It is not clear who was responsible for the alleged violation, nor is it clear who was responsible for training that person. Salmons has made no showing of deliberate indifference.

**E. Placement of Salmons's Children**

Salmons claims that DHS plans to separate his children from one another and place them in different foster homes. Salmons claims that DHS's plan has caused him distress and will cause distress to the children. Salmons also alleges that he was prevented from seeing his children on at least one occasion because he had been drinking and had a BAC of 0.04. Compl. 4-5. Salmons asserts that his degree of intoxication was not sufficient to prevent him from driving and that it was therefore unlawful for DHS to prevent him from seeing his children.

District courts are courts of limited jurisdiction and "may not grant relief absent a constitutional or valid statutory grant of jurisdiction." *A-Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003) (internal quotation marks and citation omitted). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Id.* "[A] court may raise the question of subject matter jurisdiction, *sua sponte*, at any time during the pendency of the action, even on appeal." *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002) (citation omitted).

"There is no subject matter jurisdiction over . . . domestic disputes" where a "federal court is asked to grant a divorce or annulment, determine support payments, or award custody of children." *Peterson v. Babbitt*, 708 F.2d 465, 466 (9th Cir. 1983) (citation omitted).

In *Marcus v. Oregon*, No. 3:12-cv-01750-HZ, 2012 WL 6618242 (D. Or. Dec. 12, 2012), Judge Hernandez confronted a similar issue. The court observed that, although the case raised constitutional issues, it was "at its core a child custody dispute and the claims . . . clearly arise out of Plaintiff's child-custody proceedings in Washington County Circuit Court," and that the federal court therefore lacked subject matter jurisdiction. *Id.* at *2. Like *Marcus*, this case appears to be, at its core, a child custody dispute and properly falls within the jurisdiction of the state courts.

It also appears that this claim is related to an ongoing Oregon state court proceeding. Accordingly, the *Younger* abstention doctrine is implicated.[2] Absent extraordinary circumstances, federal courts must decline to interfere with a pending state court proceeding, if the state court proceedings are (1) ongoing; (2) implicate important state interests; and (3) provide the plaintiff an adequate opportunity to litigate federal claims." *San Remo Hotel v. City and Cnty. of San Francisco*, 145 F.3d 1095, 1103 (9th Cir. 1998) (citation omitted). The *Younger* abstention doctrine permits a court to dismiss a case *sua sponte* at any point in the litigation. *See Marcus*, 2012 WL 6618242, at *2 (citing *Augustin v. Cnty. of Alameda*, 234 F. App'x 521 (9th Cir. 2007)); *Rinegard-Guirma v. U.S. Bank*, Civil No. 3:13-1072-PK, 2013 WL 4017884, at *1-2 (D. Or. Aug. 6, 2013).

In this case, the Complaint alleges that the state court juvenile dependency proceeding are ongoing. It appears that Salmons will have an opportunity to litigate the disposition of his children in that proceeding. Furthermore, family relations are a traditional and important area of state concern. *See Moore v. Sims*, 442 U.S. 415, 435 (1979). Accordingly, this claim is dismissed.

---

[2] *Younger v. Harris*, 401 U.S. 37 (1971).

### F. Seizure of Salmons' Children Without Compensation

Salmons alleges that he is entitled to monetary compensation for the state's seizure of his "property," by which he means his children. Compl. 4. As a preliminary matter, Salmons bases this claim on the fundamental misapprehension that children are property under Oregon law. It goes without saying that this belief is incorrect. "Children are not property." *In Re Marriage of Winczewski*, 188 Or. App. 667, 753 (2003) (internal quotation marks and citation omitted); *see also* U.S. Const. Amend. XIII (abolishing the practice of slavery); *New York v. Compagnie General Transatlantique*, 107 U.S. 59, 61-62 (1883) ("We know of nothing which can be exported from one country or imported into another that is not in some sense property—property in regard to which some one is owner, and is either the importer or exporter. This cannot apply to a free man. Of him it is never said he imports himself or his wife *or his children*.") (emphasis added). Accordingly, this claim is dismissed.

### G. Interference With Marital Relationship

Finally, Salmons alleges that DHS has attempted to interfere with the relationship between Salmons and his wife, apparently by informing Mrs. Salmons that they would return the children to her custody so long as she was not with Salmons. Salmons claims that DHS "failed to make attempts to ameliorate the differences between a husband and wife." Compl. 9. Salmons also alleges that the State of Oregon caused Mrs. Salmons to attempt suicide, which she allegedly did by injecting a large amount of heroin. Compl. 5.

The Court is at a loss to characterize this claim. In the first instance, Salmons fails to allege that the State of Oregon or DHS has a duty to "ameliorate the differences" between Salmons and his wife. The Complaint seems to allege a general breakdown in the relationship between Salmons and Mrs. Salmons, but does not clearly allege how DHS has interfered with the

relationship between them. Nor does the Complaint clearly allege how DHS caused Mrs. Salmons to attempt suicide, nor why the State of Oregon should be held liable for Mrs. Salmons's decision to inject dangerous amounts of heroin. It is possible that Salmons might be able to more clearly identify and state this claim in an amended complaint.

## II.     The City of Klamath Falls and the Carter Jones Collection Agency

Salmons has been cited for various Klamath Falls municipal code violations and it appears that at least some of the fines associated with these violations were not paid. Salmons later received a traffic citation for Failure to Obey a Traffic Device in violation of ORS 811.265. Compl. 6. Salmons entered a plea of "no contest," to the traffic violation and made unsuccessful attempts to pay the fine. Compl. 6. It appears that the Oregon Department of Motor Vehicles ("DMV") and/or the City of Klamath Falls refused to apply the proffered payment to the traffic ticket because city policy requires that payments be applied to the oldest outstanding debts, which were the municipal fines. Compl. 8. The Complaint shows that Salmons made two payments totaling $130 on the accumulated fees and fines in July and August 2014. Compl. 8. Salmons's driver's license was suspended in April 2015, apparently for failure to pay the traffic fine. Compl. 6. Salmons alleges that he has had difficulty working as a result of his suspended license. Compl. 7.

It appears that some or all of Salmons's fines were referred to the Carter Jones Collection Agency. At the time the fines and fees were referred to the collections agency, Salmons owed the city $2,145 in unpaid fines and fees. Compl. 8. Salmons alleges that employees of Carter Jones Collection Agency refused to accept Salmons's offers of payment. Compl. 6.

As previously noted, federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Unlike state courts, which are courts

of general jurisdiction, federal courts may only exercise jurisdiction in certain kinds of cases as authorized by the United States Constitution and Congress. *United States v. Jacobo Castillo*, 496 F.3d 947, 951 (9th Cir. 2007) (*en banc*). Federal courts have jurisdiction over two primary categories of cases: (1) those based on federal law (federal question jurisdiction); and (2) those involving citizens of different states where more than $75,000 is at issue (diversity jurisdiction). *See* 28 U.S.C. §§ 1331-32.

Diversity jurisdiction requires that the plaintiff and defendant be "citizens of different states." 28 U.S.C. § 1332(a)(1). The plaintiff has the burden of showing diversity of citizenship. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857-58 (9th Cir. 2001). An objection that a particular court lacks subject matter jurisdiction may be raised by any party, or by the court on its own initiative, at any time. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P. 12(b)(1). The court must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

In Section II of the Civil Cover Sheet, Salmons has checked the boxes for "federal question" and "diversity" as the bases for jurisdiction, although he has crossed out the federal question bubble and written "This one" beneath the bubble for diversity jurisdiction. In Section III, Salmons has checked boxes indicating that both he and Defendants are citizens of Oregon and that Defendants' principal place of business is in Oregon.

In the Complaint itself, Salmons asserts that diversity of citizenship exists because he lives in Medford, Oregon and the Oregon DMV is headquartered in Salem, Oregon.[3] Compl. 10. Salmons is also suing the City of Klamath Falls, an Oregon municipality, and the Carter Jones

---

[3] The Court notes that the Complaint contains little in the way of allegations regarding the Oregon Department of Motor Vehicles and Salmons makes no claims regarding diversity of citizenship as to either the City of Klamath Falls or the Carter Jones Collection Agency.

Collection Agency, which, according to Section III of Salmons's Civil Cover Sheet, is an Oregon company. On its face, therefore, the Complaint demonstrates a lack of complete diversity.

As there is no diversity of citizenship and Salmons does not clearly assert that his claims against the City of Klamath Falls or the Carter Jones Collection Agency arise under federal law, those claims are dismissed for lack of jurisdiction.

## CONCLUSION

For the reasons set forth above, the Complaint, ECF No. 1, is DISMISSED with prejudice as to Plaintiff's 42 U.S.C. § 1983 claims against the State Defendants. This ruling will render the State Defendants' Motion to Dismiss MOOT. ECF No. 4. The Complaint is DISMISSED with leave to amend as to Plaintiff's other claims. Plaintiff shall have thirty (30) days in which to file an amended complaint. Plaintiff is advised that failure to file an amended complaint within the allotted time will result in the entry of a judgment of dismissal.

The Court defers ruling on Plaintiff's petition to proceed IFP, ECF No. 2, until Plaintiff files an amended complaint or the time for doing so has expired.

It is so ORDERED and DATED this __8th__ day of August, 2017.

                                                                 s/ Michael J. McShane  
                                                                  MICHAEL McSHANE  
                                                                  United States District Judge